## Hartman *versus* Danner.

1. Hartman lent money to Duphorn for a year at 8 per cent. on a note, stated to be at 6 per cent., with Danner as surety; about maturity Hartman agreed to an extension for a year, upon Duphorn paying 2 per cent. usury, and in the same way for a third year. The usury was paid after the maturity of the note. Danner had no knowledge of the usury or the extensions. *Held*, that the contract for usury being illegal, it was without consideration and therefore not binding on Hartman, and he could recover from Danner notwithstanding the giving of time.

2. The payment of the usury after maturity of the note was a payment on account, which the debtor was under obligation to make, and therefore no advantage to one or disadvantage to the other, so as to create consideration.

3. A payment of part of a debt before due, is a consideration sufficient to support a contract to give time.

4. Payment of part of a debt due without a release under seal, although received in full satisfaction, will not discharge the debt.

May 18th 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Adams county:* Of May Term 1873, No. 24.

This was an action of debt brought April 5th 1870, by John Hartman against Frank D. Duphorn and Joel B. Danner on the following note:—

" On or before the 3d day of April next, we or either of us promise to pay John Hartman or order, the sum of five hundred dollars ($500) with interest from date.    Witness our hands and seals this 3d day of April 1867.

FRANK D. DUPHORN,    [SEAL.]<br>J. B. DANNER.        [SEAL.]"

Duphorn was not summoned.

It was admitted that Danner with the knowledge of Hartman was surety for Duphorn in this note.    The defence was that Hartman had given time to Duphorn upon a binding consideration.

Duphorn testified that at the date of the note he borrowed $500 from Hartman at 8 per cent. interest, and gave Hartman his due-bill for the extra two per cent., and paid the due-bill in a few weeks afterwards ; previously to the 1st of April 1868, Hartman asked for payment and Duphorn agreed to give him two per cent. extra interest, to permit the loan to continue another year; Hartman agreed to this ; Duphorn paid him his regular interest and gave him a due-bill for the extra interest, which was paid in a short time.    In the spring of 1869, Hartman demanded the money, and he again agreed to let Duphorn have it for another year upon paying him 8 per cent. interest ; on the 3d or 4th of April 1869, Duphorn paid the legal interest and gave ·Hartman " $10 worth of goods for the extra two per cent. which would not have been

[Hartman v. Danner.]

due until April 1st 1870." Danner had no knowledge that Dup-
horn had originally agreed to pay 8 per cent. interest, nor of the
different arrangements from year to year to pay the extra interest,
nor of the extension of the time.

There was other evidence corroborating the testimony of Dup-
horn.

The plaintiff's third point with its answer was :—

On an offer to pay a rate of interest higher than six per cent.
a promise by the holder of a note to give time in consideration
of the excess of interest above six per cent., accompanied or fol-
lowed by payment of such excess of interest, does not constitute
such a legal or binding agreement as can be enforced in law, so as
to prevent the promissor from proceeding to collect the note after
its maturity, and such a promise or agreement does not constitute
a defence of which a surety in the note can avail himself so as to
defeat its recovery by suit.

Answer : " This proposition of law is not correct. An agreement
to pay an increase of interest, or a sum of money for an extension
of time, if not paid will not have the effect of a binding contract;
but where the stipulated sum of money is actually paid the con-
tract is an executed one, as far as the debtor can make it so, and
binds the lender or payee to give the stipulated time and suspends
his right to bring suit, and consequently discharges the surety,
unless he assented to the contract stipulating for an extension of
the time of payment, or knowing it did not dissent from it. The
case of Galbreath v. Fullerton, cited from the 2d volume of the
Legal Opinion, p. 105, does not apply to the facts stated in this
point; for in that case the question presented was whether the
parties to an unexecuted usurious contract are, both or either of
them, bound for its performance."

The defendant's points, which were affirmed, were as follows :—

1. If Joel B. Danner was the surety of Frank D. Duphorn in
the note in suit, and John Hartman, the plaintiff, with knowledge
that Mr. Danner was only the surety, entered into a contract or
agreement with Mr. Duphorn, without the knowledge or consent
of the surety, by which the time for the payment of the note was
extended a year beyond the time mentioned in the note, in con-
sideration of Mr. Duphorn giving him his note or due-bill for two
per cent. extra interest on the principal sum mentioned in the note,
and afterwards received payment of the note or due-bill for the
extra interest, it is a new contract and the surety is discharged
from liability on the note.

2. If the plaintiff (knowing that Mr. Danner was the surety in
note), after the note was over due, received of Mr. Duphorn ten
dollars worth of goods, in consideration of which he agreed to let Mr.
Duphorn have the money another year, without the knowledge or
consent of the surety, it would be such an agreement between the

[Hartman *v.* Danner.]

plaintiff and the principal debtor in the note as would release the surety.

3. If there was an agreement made at the time the money was obtained, by which Duphorn was to pay eight per cent. interest for the money, and a note or due-bill was given by Duphorn to Hartman for the excess of interest over six per cent. for one year, at the time the money was obtained, which was paid by Duphorn to Hartman, before the note for the money loaned was due, it was only a contract for the one year; and if after, or before, the note in suit was due, Hartman received another due-bill from Duphorn, which was paid a short time after it was given, for the excess over six per cent. interest for another year, and in consideration of receiving this due-bill for the excess of interest, agreed to extend the time of payment of the note in suit a year beyond when it became due, and the due-bill for this excess of interest was paid to the plaintiff, and all this was without the knowledge or consent of the surety, he is not liable on the note.

4. If there was an agreement, made nearly a year after the note was given, between Hartman and Duphorn, by which he was to pay eight per cent. interest for the money the note in suit was given for, and in pursuance of such agreement Hartman received the due-bill of Duphorn for the extra two per cent. interest, and subsequently, after the note in suit was due, received payment of the due-bill, before the expiration of the time for which the extra interest was paid, in consideration of his agreement with Duphorn to extend the time for the payment of the note a year longer, without the knowledge or consent of the surety, the surety is discharged.

The court (Fisher, P. J.) further instructed the jury, * * * "If an agreement to extend the time for the payment of the note in suit was twice made—once for the note for $10, and it was paid and afterwards extended again for the consideration of $10 worth of store goods, which were delivered at or about the time the contract was made—and the time was in each case given as contracted for, it was an executed contract, and bound Mr. Hartman to comply with it. A man cannot commit a sin against the law, and admit his offence, and say : I know I have sinned, but it is to my advantage to admit it, and I therefore do it. He must suffer the penalty of his offence ; for no one is permitted to take advantage of his own wrong.

[We therefore say to you, that if there was a contract to pay an additional per centage for time, and that it was paid and the time was given, Mr. Hartman cannot set up the Act of Assembly in relation to usurious interest as a shield to protect him against the consequences of his illegal act, and that Mr. Danner as a surety can set up the contract as an equitable defence to this action.]

[Hartman v. Danner.]

" The obligation of a surety, in a note like the present, is not an absolute and unconditional obligation to pay if the principal does not, but in several instances is dependent upon the conduct of the lender. One of them is, that he shall not alter the contract made by the surety, by giving an extension of time. He is not under any obligation to sue the principal debtor as soon as the note becomes due; but if he binds himself, for a consideration executed, to extend the time of payment, so that he is disabled from enforcing the payment of the note, the surety is discharged.

"[In any case of suretyship, the surety has the right to give notice to the creditor to sue the principal debtor as soon as the claim becomes due, or if over due to collect the same by legal process, or he will consider himself discharged. And a refusal or neglect to sue will discharge the surety. And if the creditor has placed himself in such a condition that he cannot sue the debtor, the surety is discharged. If the facts in the case are as contended for by the defendant, and two separate and distinct agreements were made to give time for a stipulated consideration paid to the plaintiff by Mr. Duphorn, and the defendant did not know of the agreement and did not consent to it directly or indirectly, and in consequence of this arrangement the plaintiff gave Mr. Duphorn the time stipulated for, the defendant is discharged, the plaintiff cannot recover in this case, and your verdict must be for the defendant.]"

The verdict was for the defendant.

The plaintiff took out a writ of error and assigned for error the answers to the points and the parts of the charge in brackets.

*D. McConachy*, for plaintiff in error.—The surety must quicken the creditor when the occasion requires it; in default of which the loss is to be attributed to his supineness: United States v. Simpson, 3 Penna. R. 437; Rhoads v. Frederick, 8 Watts 448. Nothing short of an engagement by which his hands are tied and a suit prevented, can discharge the surety: Cope v. Smith, 8 S. & R. 110; Gardner v. Ferree, 15 Id. 28. The holder may defer suing the surety as long as he pleases; he may even promise not to press him or not to sue him. If such agreement be without consideration, or otherwise void in law, the endorsers are not discharged: Byles on Bills 193, 194. The consideration here being illegal, was therefore void. There could be no ratification by payment. The promise was absolutely void: Pearsoll v. Chapin, 8 Wright 9. Where the contract is in substance or in essential form illegal, neither party can ratify it: Fitzsimmons v. Wallace, 8 Wright 32. An action to recover usurious interest under the Act of 1858, is not in disaffirmance of the contract: Heath v. Page, 12 Wright 130; s. c. 13 P. F. Smith 108.

*H. B. Woods* (with whom was *McClean*), for defendant in error.
—The rights acquired by Duphorn by reason of payment volun-

tarily made to Hartman, in pursuance of his contract for extension, cannot be denied to him by Hartman, he having received the money for his promise : Walker *v*. Coover, 15 P. F. Smith 432. A party may waive the protection of a statute : Slack *v*. Kirk, 17 P. F. Smith 384. Although an agreement executory may be avoided, yet if a party to it receives the consideration for his promise, it becomes an executed agreement and a new contract binding on the parties : Uhler *v*. Applegate, 2 Casey 140.

The opinion of the court—WILLIAMS and MERCUR, JJ., dissenting—was delivered July 2d 1873, by

SHARSWOOD, J.—The facts of this case as presented on this record appear to be, that on April 3d 1867, Duphorn, with Danner as his surety, executed and delivered a sealed note, binding them to pay Hartman five hundred dollars on or before April 3d 1868, with interest from date. At the time the note was given, Duphorn, without the knowledge of Danner, agreed to pay two per cent. extra interest, and gave his due-bill for the usury, which was afterwards paid. A short time before the note fell due Hartman agreed to extend the time for another year upon Duphorn's giving his due-bill for two per cent. extra interest, which was also afterwards paid. In the spring of 1869 the time was again in like manner extended, Duphorn giving to Hartman and his wife ten dollars worth of goods for the extra two per cent., which would not have been due under this arrangement, supposing it to be valid, until April 1870. Danner was ignorant of these extensions.

Had all this, or any of it, the effect of discharging the surety, Danner ? This evidently depends upon another question, were the agreements to extend the time founded upon a sufficient consideration so as to be legally binding upon the parties ?

A payment of part of a debt, either principal or interest, before it is legally demandable, will be a sufficient consideration to support an agreement to give time : Flynn *v*. Mudd, 27 Illinois 323 ; Manufacturers' and Mechanics' Bank *v*. Bank of Pennsylvania, 7 W. & S. 340. But such payment after maturity of the debt has not the same effect, for the plain reason that in a legal sense it is neither a benefit to the creditor, who is entitled to the whole, nor an injury to the debtor, who ought to have done this and more without any promise from the creditor : Pabodie *v*. King,˙12 Johns. 426 ; Mason *v*. Peters, 4 Verm. 104 ; Halstead *v*. Brown, 17 Indiana 202 ; Weidman *v*. Weitzel, 13 S. & R. 96. For the same reason payment of part of a debt, though received in satisfaction, if without a release under seal, will not have the effect of extinguishing the whole : Latapee *v*. Pechollier, 2 W. C. C. Rep. 180 ; Geiser *v*. Kershner, 4 Gill & Johns. 305 ; Lowrie *v*. Verner, 3 Watts 319 ; Savage *v*. Everman, 20 P. F. Smith 319.

It is clear, as held by the learned judge below, that the due-bills to pay the usurious interest were void contracts under the

[Hartman v. Danner.]

statute, and could not be a good consideration for any undertaking based upon them: Payne v. Powell, 14 Texas 600. What effect then did the payment of the due-bill given just before the maturity of the note produce? Assuming it to have been paid after the note had fallen due, it was in law a part payment on account of the debt and lawful interest. It cannot be doubted that either Duphorn or Danner, when sued on the note, could have insisted upon a credit for this amount. Such is clearly the provision of the Act of May 28th 1858, Pamph. L. 622: "It shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any such debt." What the principal had a right to deduct as payment, the surety may certainly avail himself of. It follows, logically, that the payment of this due-bill—and the same principle applies to the subsequent payment in goods—having been made after the maturity of the debt, formed no sufficient consideration for the contract to give further time.

It may be, that when there is a contract to pay interest for a specified period on a debt already due, so that the debtor, without the consent of the creditor, is thereby precluded from paying the debt and interest until the term expires, there is an appreciable benefit to the creditor as well as injury to the debtor: Chute v. Patteo, 37 Maine 102. But nothing upon which to found such a point appears in the evidence in this case. By the original contract, the obligors could have discharged the debt at any time on or before April 3d 1868, and the extensions were evidently of that contract, with this provision.

It may appear to be a very refined technicality that a part payment on account of a debt twenty-four hours before it is due, will, and twenty-four hours after, will not form a sufficient consideration for an agreement to extend the time. We must remember, however, that the law pays no regard to the adequacy of consideration. There must be some legal benefit to the one party or injury to the other, though it may be of the slightest kind. It must be a benefit or injury, which the law can recognise and appreciate, not the performance in part or in whole of that which is already an ascertained and matured obligation.

The application of these principles to the answers to the points presented and the charge below, show that the learned judge fell into an error in holding that the payment of the usury, though it may have been after the maturity of the debt, constituted a sufficient consideration for the agreement to give time so as to discharge the surety.

Judgment reversed, and *venire facias de novo* awarded.[1]

---

[1] This case again tried and a verdict and judgment rendered for the plaintiff. On a writ of error to May Term 1874, the last judgment was affirmed.